1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>         v.<br><br>SHARON BUSHMAN, et al.,<br><br>                    Defendants. | Case No.  1:22-cv-01167-ADA-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(ECF No. 25)<br><br>**FOURTEEN-DAY DEADLINE** |

Currently before the Court is Plaintiff American General Life Insurance Company's ("Plaintiff" or "American General") motion for default judgment, filed on April 11, 2023.  (ECF No. 25.)  No oppositions were filed and the deadline to do so has now expired.  A hearing on the motion was held on May 24, 2023. (ECF No. 28.)  Counsel C. Summer Simmons, PHV appeared by videoconference for Plaintiff.  Counsel Tran Nguyen appeared by videoconference for the Fresno County Public Guardian, as the conservator of the property and estate of Defendant Micklos Lemons.  No appearances were made by Defendants Sharon Bushman or Heather K. Litz.  (See id.)  Having considered the moving papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following findings and recommendations recommending Plaintiff's motion for default judgment in interpleader be granted.

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

# BACKGROUND

### A.    Plaintiff's Allegations

This is an interpleader action brought by Plaintiff insurance company American General to resolve competing claims to payments due under the structured settlement annuity of decedent Michael Linn Lemons.  Plaintiff brings this interpleader action pursuant to Federal Rule of Civil Procedure 22.  (Compl. ¶¶ 1, 5, ECF No. 1.)

Western National issued annuity No. 199934 (the "Annuity"), effective September 15, 1982, in connection with Michael Linn Lemons's ("Michael") settlement of a personal injury lawsuit.[1]  (Id. at ¶ 7.)  To fund its obligation to make certain payments in accordance with the settlement, Interstate Fire and Casualty Company ("IFCC") purchased the Annuity from Plaintiff, naming Michael as the annuitant and measuring life.  (Id. at ¶ 8; Ex. 1, ECF No. 1-1 (Annuity schedule page).)  The Annuity directs certain guaranteed payments of $100,000.00 to be paid every five years on September 15, including but not limited to the years of 2012, 2017, 2022, 2027, and 2032.  (Compl. ¶ 9, n.2; Ex. 1.)  At the time of issuance, IFCC was the designated beneficiary of the Annuity, with the right to change the beneficiary reserved.  (Compl. ¶ 9; Ex. 2, ECF No. 1-2 (Annuity application).)

On or around November 9, 1992, Plaintiff received a letter and general power of attorney from Edith Lemons ("Edith"), advising that Edith had power of attorney over Michael because he did not have the use of his hands.  (Compl. ¶ 10; Ex. 3, ECF No. 1-3 (power of attorney and letter from Edith).)

On or around May 6, 2006, Plaintiff received an additional power of attorney naming Freda B. Bales ("Freda") as Michael's agent and Leon Lemons ("Leon") as alternate agent.  (Compl. ¶ 11; Ex. 4, ECF No. 1-4 (power of attorney from Freda).)

On or around August 23, 2007, Freda submitted a beneficiary change form to Plaintiff naming herself and Defendant Sharon Bushman ("Sharon") as the beneficiaries of the Annuity.

---

[1] Plaintiff is the successor-in-interest to Western National Life Insurance Company ("Western National").  (Compl. ¶¶ 7, n.1.).

1    (Compl. ¶ 12; Ex. 5, ECF No. 1-5 (beneficiary change form).)

2            By letter dated September 25, 2007, Plaintiff requested that IFCC approve or deny Freda's

3    beneficiary change request.  (Compl. ¶ 13; Ex. 6, ECF No. 1-6 (Plaintiff's letter to IFCC).)  IFCC

4    approved the request, which was received by Plaintiff on or around October 10, 2007, and

5    officially acknowledged and recorded by Plaintiff the same day.  (Compl. ¶ 14; see also Ex. 5.)

6            On February 1, 2010, Michael passed away.  (Compl. ¶ 15.)

7            After Michael's death, Plaintiff provided death claim paperwork to the designated

8    beneficiaries, Freda and Sharon.  (Id. at ¶ 16.)  Upon receipt of the completed paperwork,

9    Plaintiff split the Annuity payments equally between Freda and Sharon (the "Freda Annuity

10   Payments" and the "Sharon Annuity Payments").  (Id.)  As part of the death claim paperwork,

11   Freda and Sharon provided beneficiary forms for their Annuity payments.  (Id. at ¶ 17.)  Freda

12   named her husband, Darrell Bales ("Darrell") as the sole primary beneficiary of the Freda

13   Annuity Payments, and Defendant Miklos as the contingent beneficiary.  (Id.; Ex. 7, ECF No. 1-7

14   (Freda's beneficiary form).)  So did Sharon.  (Compl. ¶  17; Ex. 8, ECF No. 1-8 (Sharon's

15   beneficiary form).)

16           On September 15, 2012, Plaintiff tendered equal lump sum payments to Sharon and Freda.

17   (Compl. ¶ 18.)

18           On October 3, 2014, Freda passed away (leaving Darrell as the sole beneficiary of the

19   Freda Annuity Payments).  (Id. at ¶ 19.)

20           On August 24, 2015, Darrell died.  (Id. at ¶  20.)  Darrell did not provide death claim

21   forms to Plaintiff prior to his death; therefore, his estate became the default beneficiary of the

22   Freda Annuity Payments.  (Id. at ¶ 21.)  Plaintiff later received the necessary death claim

23   paperwork from Darrell's estate, in which Darrell's granddaughter, Defendant Heather Litz

24   ("Heather"), was named the designated trust beneficiary to whom the Freda Annuity Payments

25   were to be directed.  (Id. at ¶ 22.)

26           On September 15, 2017, Plaintiff tendered lump sum payments in equal portions to

27   Sharon and Heather.  (Id. at ¶ 23.)

28           On or around May 3, 2022, the Fresno County Public Guardian ("Guardian") was

1  appointed as the conservator of the property and estate of Defendant Micklos.  (Id. at ¶¶ 4, 24; Ex.

2  9, ECF No. 1-9 (letters of conservatorship).)  Guardian requested Annuity beneficiary information

3  from Plaintiff.  (Compl. ¶ 25.)  Plaintiff advised Guardian that Freda and Sharon were the

4  Annuity beneficiaries at the time of Michael's death.  (Id. at ¶ 26.)  By letter dated August 3,

5  2022, Guardian formally disputed the validity of the current beneficiaries (Freda and Sharon),

6  indicating its belief that Micklos, Michael's son, was the intended beneficiary of Michael's

7  benefit, and that Freda and Sharon had become beneficiaries as a result of fraudulent activity or

8  undue influence.  (Id. at ¶ 27; Ex. 10, ECF No. 1-10 (Guardian's letter of dispute).)

9       Plaintiff alleges it is a neutral stakeholder with respect to the Annuity payments, and is

10  ready to deliver the remaining payments upon order of this Court.  (Compl. ¶¶ 30, 31.)  Due to the

11  instant dispute between the Defendants as to who is legally entitled to the remaining Annuity

12  payments, and to which Defendant/s Plaintiff should deliver the remaining Annuity payments,

13  Plaintiff placed a hold on the remaining Annuity payments, effective as of the September 15,

14  2022 payment and filed the instant action in interpleader.  (Id. at ¶¶ 28, 29.)

15       **B.    Procedural History**

16       On September 13, 2022, Plaintiff filed this action against Defendants Sharon, Heather,

17  and Micklos (collectively, "Defendants").  (ECF No. 1.)  The complaint asserts one cause of

18  action, for interpleader, based on the conflicting claims to the remaining Annuity payments and

19  Plaintiff's inability to tender the remaining Annuity payments absent a court order identifying the

20  proper beneficiary or beneficiaries.  (Id. at 7–8.)  The complaint seeks an order directing

21  Defendants to interplead and litigate their competing claims and respective rights to the remaining

22  Annuity payments within a specified time; interpleading all claims as to the remaining Annuity

23  payments or, alternatively, declaring which party is entitled to the remaining Annuity payments;

24  enjoining Defendants and any other potential claimants from exercising rights or benefits under

25  the Annuity until the Court issues an order regarding the entitlement status of the "interpleader

26  property," and from initiating any action against Plaintiff related to the facts that form the basis of

27  the instant action; awarding Plaintiff reasonable attorneys' fees, to be deducted from the

28  remaining Annuity payments; discharging Plaintiff from further liability with respect to the

Annuity; and dismissing Plaintiff from this action, with prejudice, upon an order permitting Plaintiff to deposit the remaining Annuity payments, as they become due under the schedule set forth in the Annuity, into the Court's Registry pending resolution of the competing claims.  (Id. at 8–9.)

Micklos, through his court-appointed conservator (Guardian), answered the complaint on January 20, 2023.  (ECF No. 18.)  The executed waiver of service for Heather indicates Plaintiff personally served Heather with the summons and complaint on November 10, 2022.  (ECF No. 7.)  On January 26, 2023, the Court granted Plaintiff's motion to serve Sharon by publication.  (ECF Nos. 15, 19, 20.)  On March 8, 2023, Plaintiff filed a notice of completion of service on Sharon by publication.  (ECF No. 22.)  Neither Heather nor Sharon has answered the complaint or otherwise appeared in this action.  At Plaintiff's request, Default was entered against Heather and Sharon on April 6, 2023.  (ECF Nos. 23, 24.)

Plaintiff filed the instant motion for default judgment against Heather and Sharon on April 11, 2023, seeking interpleader relief and annuity payment direction.  (ECF No. 25.)  Specifically, the motion seeks an order (1) entering default judgment against Heather Litz and Sharon Bushman, (2) granting Plaintiff's claim for interpleader, (3) enjoining Defendants from initiating litigation against Plaintiff on claims arising out of the instant matter, (4) discharging Plaintiff from any further liability relating to the Annuity payments beyond making payments as contemplated by this order, (5) directing Plaintiff to pay the remaining Annuity payments to Defendant Micklos Lemons (via his court-appointed conservator, the Fresno County Public Guardian) or his estate, if Micklos dies before disbursement of the final payment, (6) awarding Plaintiff attorneys' fees and costs in the amount of $10,000.00, to be withheld from the $100,000.00 September 15, 2022 Annuity payment, and (7) dismissing with prejudice all claims the could have been asserted against Plaintiff arising out of the Annuity and/or Annuity payments that are the subject of the instant litigation.  (Id. at 2–3.)  Defendant Micklos has stipulated to the motion.  (See id. at 3; ECF No. 25-1 at 5.)  No opposition to Plaintiff's motion has been filed.  The matter came before the Court for hearing on May 24, 2023.  (ECF No. 28.)  As previously noted, counsel for Plaintiff and counsel for the Fresno County Public Guardian (as the

1  conservator of the property and estate of Defendant Micklos Lemons), appeared by

2  videoconference; however, no appearances were made by Defendants Heather or Sharon. (See

3  id.)  The matter is deemed submitted.

**II.**

**LEGAL STANDARD**

6  "Our starting point is the general rule that default judgments are ordinarily disfavored," as

7  "[c]ases should be decided upon their merits whenever reasonably possible." NewGen, LLC v.

8  Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472

9  (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default

10  judgment is a two-step process.  Entry of default is appropriate as to any party against whom a

11  judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided

12  by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or

13  otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default

14  judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a

15  default judgment:

> (b) Entering a Default Judgment.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Id.

The decision to grant a motion for entry of default judgment is within the discretion of the

court.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.").  The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel, 782 F.2d at 1471–72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).  The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

**III.**

**DISCUSSION**

Before it may evaluate the Eitel factors to determine whether default judgment should be entered, the Court must first determine whether it properly has jurisdiction in this matter.

**A.     Jurisdiction Over Interpleader Action**

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Plaintiff asserts the Court has jurisdiction over this matter pursuant to Federal Rule of Civil Procedure 22

(Interpleader) and diversity jurisdiction.  A "Rule interpleader" action is proper when jurisdiction can be established under general statutes governing federal court jurisdiction.  Alternatively, subject-matter jurisdiction for a "Statutory interpleader" may be established pursuant to 28 U.S.C. § 1335 when there exists "minimal diversity" between the claimants and the amount in controversy exceeds $500.  Herman Miller, Inc. Ret. Income Plan v. Magallon, No. 2:07-cv-00162-MCE-GGH, 2008 WL 2620748, at *2 (E.D. Cal. Jul. 2, 2008) (citations omitted).

Here, Plaintiff fashions the complaint as a Rule 22 interpleader action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (ECF No. 1 at 3.)

A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, … and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state …."  28 U.S.C. § 1332(a)(1)–(2).  The burden of proving the amount in controversy depends on the allegations in the plaintiff's complaint.  See Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998–1000 (9th Cir. 2007).  When the complaint alleges damages less than the jurisdictional requirement, the party seeking to establish diversity jurisdiction must prove the amount in controversy with legal certainty.  Id.; Rynearson v. Motricity, Inc., 601 F. Supp. 2d 1238, 1240 (W.D. Wash. 2009).

Here, Plaintiff asserts the amount in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.  (Compl. ¶ 5.)  This is demonstrated by Plaintiff's allegations, which show Annuity payments made (and to be made) between 2012 and 2032 in the amount of $100,000.00 each.  (See id. at ¶ 9.)  Plaintiff alleges it is a citizen of the state of Texas; Defendants Sharon and Micklos are citizens of the state of California; and Defendant Heather is a citizen of the state of Florida.  (Id. at ¶ 5.)  Thus, Plaintiff has established complete diversity between the parties named in the lawsuit and the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Accordingly, the Court has subject matter jurisdiction under Rule 22 over Plaintiff's interpleader complaint based on diversity.

///

///

1    **B.    Jurisdiction Over Defendants Heather and Sharon[2]**

2         1.    Legal Standards for Service of Process

3         As a general rule, the Court considers the adequacy of service of process before evaluating

4    the merits of a motion for default judgment.  See J & J Sports Prods., Inc. v. Singh, No. 1:13-cv-

5    1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v.

6    S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco Tech. Corp., 960

7    F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier

8    action, the default judgment is void and has no res judicata effect in this action.").  Service of the

9    summons and complaint is the procedure by which a court having venue and jurisdiction of the

10   subject matter of the suit obtains jurisdiction over the person being served.  Miss. Publ'g Corp. v.

11   Murphree, 326 U.S. 438, 444–45 (1946); see Direct Mail Specialists, Inc. v. Eclat Computerized

12   Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have

13   jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P.

14   4.").

15        Service of a complaint in federal court is governed by  Rule 4.  "Rule 4 is a flexible rule

16   that should be liberally construed so long as a party receives sufficient notice of the complaint."

17   Direct Mail, 840 F.2d at 688 (quoting United Food & Com. Workers Union v. Alpha Beta Co.,

18   736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule 4,

19   'neither actual notice nor simply naming the defendant in the complaint will provide personal

20   jurisdiction.' "  Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.

21   1986)).  "Once service is challenged, plaintiffs bear the burden of establishing that service was

22   valid under Rule 4."  Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted).

23   "[A] signed return of service constitutes prima facie evidence of valid service which can be

24   overcome only by strong and convincing evidence."  SEC v. Internet Sols. for Bus., Inc., 509

25   F.3d 1161, 1163 (9th Cir. 2007).

26   _____

27   [2] There is no question or challenge as to service on Defendant Micklos.  As the Court has noted, Micklos was personally served via his court-appointed guardian (ECF No. 6), he answered the complaint, thus appearing in this action (ECF No. 18), and no default was entered against him (see ECF Nos. 23, 24).  Further, Micklos has stipulated

28   to Plaintiff's motion for default judgment in interpleader (see ECF No. 25-1 at 5), as he is the party Plaintiff seeks to have identified as the proper beneficiary to Michael's Annuity payments.

Rule 4(e) provides that service may be effectuated on a competent, adult individual by: (1) delivering a copy of the summons and the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e)(2)(A)–(C).  Rule 4 also permits service on an individual in accordance with state law.  Fed. R. Civ. P. 4(e)(1).

California identifies a number of manners in which service may be completed on an individual and/or his agent, including personal service (Cal. Code Civ. Proc. § 415.10), substituted service (Cal. Code Civ. Proc. § 415.20), and service by publication (Cal. Coe Civ. Proc. § 415.50).

As noted under Cal. Code Civ. Proc. § 415.50, service by publication is permitted where the Court is satisfied that the party cannot be served with reasonable diligence in any other manner, and either: (1) a cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action; or (2) the party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding the party from any interest in the property.  Cal. Code Civ. Proc. § 415.50(a).

2.      Service on Defendant Heather Litz

The executed waiver of service for Heather indicates Plaintiff personally served Heather with the summons and complaint on November 10, 2022, at 9228 Bradleigh Dr., Winter Garden, Florida 34787.  (ECF No. 7.)  The waiver is signed by Heather, further indicating she was personally served.  (Id.)

Accordingly, the Court finds service was properly effected on Defendant Heather Litz.  Internet Sols. for Bus., Inc., 509 F.3d at 1163.

3.      Service on Defendant Sharon Bushman

As noted, the Court previously granted Plaintiff's motion to serve Sharon by publication, based on its finding that Plaintiff adequately satisfied the requirements set forth under Cal. Code Civ. Proc. § 415.50.  (See ECF Nos. 15, 19, 20.)  More specifically, the Court concluded, based

10

on Plaintiff's supporting affidavit (Reinbold Decl., ECF No. 19), that a cause of action exists against Sharon (see ECF No. 20 at 4–6); and that Plaintiff acted with reasonable diligence in attempting to serve Sharon (see id. at 7–8 (detailing multiple service attempts by multiple process servers at different addresses, use of Accurint, and a private investigator to locate and serve Sharon)).  The Court ordered Plaintiff to complete service on Sharon by publication in the Fresno Bee, in accordance with California Code of Civil Procedure § 415.50(b) and California Government Code § 6064.  (Id. at 9–10.)  For purposes of the instant jurisdictional inquiry, the Court concludes again that Plaintiff's filings satisfied the requirements under Cal. Code Civ. Proc. § 415.50 to serve Sharon by publication.

On March 8, 2023, Plaintiff filed a proof of service for service of process by publication on Sharon.  (ECF No. 22.)  Section 6064 requires publication once a week for four successive weeks.  Cal. Gov. Code § 6064.  Consistent with the requirements of § 6064, the affidavit of publication indicates Plaintiff published the summons for Sharon in the Fresno Bee on February 3, 2023, February 10, 2023, February 17, 2023, and February 24, 2023.  (ECF No. 22-1 at 1.)

On this record, the Court concludes service was properly effected on Defendant Sharon Bushman by publication.  Cal. Code Civ. Proc. § 415.50; Cal. Gov. Code § 6064.

In sum, the Court finds service was properly effected on Defendants Heather Litz and Sharon Bushman.

**C.   Evaluation of the <u>Eitel</u> Factors in Favor of Default Judgment**

For the reasons discussed herein, the Court finds that consideration of the <u>Eitel</u> factors weighs in favor of granting default judgment.

1.   Possibility of Prejudice to Plaintiff

The first factor considered is whether Plaintiff would suffer prejudice if default judgment is not entered.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012).  Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because Plaintiff does not have any other way to determine to whom of the

1   Defendants it should issue the remaining Annuity payments, and failure to issue the Annuity

2   payments to the proper beneficiary/ies could subject Plaintiff to further litigation.  See Vogel v.

3   Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).  This factor weighs in favor

4   of default judgment.

5          2.      Merits of Plaintiff's Claim and Sufficiency of the Complaint

6          The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a

7   claim on which [they] may recover."  PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Notably a

8   "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of

9   law."  DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007).  As mentioned, the

10  complaint asserts a single claim in interpleader.

11         The Court previously summarized the allegations contained in the operative complaint and

12  supporting documents that were submitted in support of the motion for default judgment.  The

13  Court incorporates Section I here by way of reference.

14         "In an interpleader action, the 'stakeholder' of a sum of money sues all those who might

15  have claim to the money, deposits the money with the district court, and lets the claimants litigate

16  who is entitled to the money."  Cripps, 980 F.2d at 1265.  "The purpose of interpleader is for the

17  stakeholder to protect itself against the problems posed by multiple claimants to a single fund."

18  Lee v. W. Coast Life Ins. Co., 688 F.3d 1004, 1009 (9th Cir. 2012) (citation and internal

19  quotations omitted).  The Ninth Circuit explains that an interpleader action typically involves two

20  stages: (1) the district court must determine whether the requirements for an interpleader action

21  have been met by determining if there is a single fund at issue and whether there are adverse

22  claimants to that fund; and (2) if the interpleader action has been properly brought, the district

23  court must make a determination of the respective rights of the claimants.  Id. (citations omitted).

24  As noted, Plaintiff seeks to discharge itself from all liability and be dismissed with prejudice from

25  the litigation; to enjoin all future related litigation; to recover attorneys' fees; and it seeks an order

26  directing it to pay the remaining Annuity payments to Defendant Micklos Lemons.  (ECF No. 1 at

27  3; ECF No. 25-1 at 5.)

28         Federal Rule of Civil Procedure 22 provides that a plaintiff may establish grounds for

interpleader where "persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead."  Fed. R. Civ. P. 22(a)(1).  Rule 22 provides that joinder for interpleader is proper even though:

> **(A)** the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

> **(B)** the plaintiff denies liability in whole or in part to any or all of the claimants.

Id. (emphasis in original).

"Interpleader is appropriate if the stakeholder-plaintiff has a real and reasonable fear of double liability or vexatious, conflicting claims.  This danger need not be immediate; any possibility of having to pay more than is justly due, no matter how improbable or remote, will suffice."  Prudential Ins. Co. of Am. v. Wells, No. C09–0132 BZ, 2009 WL 1457676, at *2 (N.D. Cal. May 21, 2009) (citations and internal quotation marks omitted).  As such, "[t]he court's jurisdiction in an interpleader action extends both to potential and actual claims."  United Investors Life Ins. Co. v. Grant, No. 2:05-cv-1716-MCE-DAD, 2006 WL 1282618, at *2 (E.D. Cal. May 9, 2006).

Here, Plaintiff has demonstrated that it has a real and legitimate fear of multiple litigations with regard to claims against the Annuity.  Sharon and Freda were named beneficiaries prior to Michael's death; thereafter, Heather was ultimately named a beneficiary through Freda's benefit, and the suspicions of fraudulent activity or undue influence asserted by Micklos's conservatorship guardian raise additional questions about the validity of some of the beneficiary designations.  Given the multiple conflicting claims to the Annuity proceeds from Defendants and the uncertainty as to the identify of the proper primary beneficiary (or beneficiaries), the Court finds that Plaintiff has met its burden of showing that it "may be exposed to double or multiple liability" under Rule 22(a)(1).  Thus, interpleader is proper.

Further, based on the aforementioned substantive facts alleged in the complaint, the Court finds Plaintiff has sufficiently established Defendant Micklos as the proper beneficiary to the remaining Annuity payments in this action.  "A named interpleader defendant who fails to answer

13

the interpleader complaint and assert a claim to the res forfeits any claim of entitlement that might have been asserted if service was properly effected upon them … The Court may accordingly, in its discretion, grant default judgment against the non-appearing interpleader defendants where the only remaining claimants demonstrate their entitlement to the funds and do not dispute the respective distributions." Standard Ins. Co. v. Asuncion (Asuncion), 43 F. Supp. 3d 1154, 1156 (W.D. Wash. 2014) (quoting Sun Life Assur. Co. of Canada, (U.S.) v. Conroy, 431 F. Supp. 2d 220, 226 (D.R.I. 2006)); see also Cripps, 980 F.2d at 1267 (appearing claimants must demonstrate entitlement to benefits); Nationwide Mutual Fire Ins. Co. v. Eason (Eason), 736 F.2d 130, 133 n.6 (4th Cir. 1984) ("Clearly, if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund.").

Plaintiff adequately alleges Micklos, as Michael's son, is the proper beneficiary of the insurance policy at issue.  Defendants Heather and Sharon both defaulted in relation to the interpleader complaint.  Accordingly, it is within the Court's discretion to grant default judgment against the non-appearing interpleader Defendants.  Because Micklos is the only interpleader Defendant that has appeared and been designated as proper beneficiary of the interpleaded funds, the second and third Eitel factors weigh in favor of default judgment.

3.      The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, because Plaintiff seeks only issuance of the remaining Annuity payments, and there is no particular conduct of any Defendant at issue, this factor weighs neither for nor against entry of default judgment.

4.      The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of a dispute concerning material facts.  As discussed previously, Plaintiff has met its burden of establishing interpleader is proper. Defendant Micklos has appeared in this action and stipulated to Plaintiff's motion seeking an order directing payments be made only to Micklos, as Michael's son and beneficiary of the

Annuity at issue; whereas, Defendant Heather and Sharon have defaulted. Because "all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005). Thus, taking the pleaded facts as true, the Court finds this factor favors entry of default judgment.

5.    Whether the Default was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that a defendant's default resulted from excusable neglect. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment as Sharon and Heather have failed to file a responsive pleading or otherwise appear in this action, despite being properly served. See id. ("The default of defendant … cannot be attributed to excusable neglect. All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

6.    The Strong Policy Favoring a Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). The Court finds this factor weighs in favor of granting default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

In conclusion, the Court finds default judgment is appropriate as to both default Defendants Sharon and Heather. Therefore, the Court finds Plaintiff's motion for default

1    judgment should be granted as to each Defendant.

2    **D.      Requested Relief: Determination of Respective Rights of the Claimants**

3          1.      Discharge and Dismissal

4          Having determined that an interpleader is proper, the Court may discharge the stakeholder

5    from further liability.  Transamerica Life Ins. Co. v. Shubin, No. 1:11-cv-01958-LJO-SKO, 2012

6    WL 2839704 at *6 (E.D. Cal. Jul. 10, 2012), report and recommendation adopted, 2012 WL

7    3236578 (E.D. Cal. Aug. 6, 2012); see also Wells Fargo Bank v. PACCAR Fin. Corp., No. 1:08-

8    cv-00904-AWI-SMS, 2009 WL 211386, at *2 (E.D. Cal. Jan. 28, 2009) (explaining that in a

9    rule interpleader action, "[i]f an interpleading plaintiff has no interest in the stake, the plaintiff

10   should be dismissed").  "A court should readily discharge a disinterested stakeholder from further

11   liability  absent  a  stakeholder's  bad  faith  in  commencing  an interpleader action,  potential

12   independent  liability  to  a  claimant,  or  failure  to  satisfy  requirements  of  rule  or  statutory

13   interpleader."  OM Financial Life Ins. Co. v. Helton, No. 2:09-cv-01989-WBS-EFB, 2010 WL

14   3825655, at *3 (E.D. Cal. Sept. 28, 2010).

15         In  support  of  discharge,  Plaintiff  contends  that  it  has  no  claims  or  interests  in  the

16   remaining  Annuity  payments,  and  has  been  willing  to  deliver  them  to  the  person  or  persons

17   entitled to them.  (Compl. ¶ 35.)  The Court finds Plaintiff has shown no other interests in the

18   litigation or bad faith in initiating the proceedings.  Furthermore, no oppositions have been filed

19   against Plaintiff's motion—indeed, Defendant Micklos, the only appearing Defendant in this

20   action,  has  stipulated  to  Plaintiff's  motion—and,  as  previously  discussed,  the  requirements  of

21   Rule  interpleader  have  been  met.    Therefore,  discharging  Plaintiff  from  all  liability  and

22   dismissing it with prejudice from the case is appropriate.

23         Further, in addition to discharging the interpleading plaintiff from further liability, "any

24   civil action of interpleader," the court may enjoin the parties from instituting further related

25   actions and make all other appropriate orders.  28 U.S.C. § 2361; Great Am. Life Ins. Co. v.

26   Brown-Kingston, No. 2:18-cv-02783-MCE-KJN, 2019 WL 8137717, at *3 (E.D. Cal. May 14,

27   2019).  As soon as Micklos raised with Plaintiff the question as to the proper beneficiary/ies of

28   the  instant  Annuity  payments,  Plaintiff  brought  this interpleader action  as  a  disinterested

stakeholder solely to determine the proper party/parties to receive the remaining Annuity payments and to avoid potential future litigation.  Accordingly, the Court will recommend enjoining all Defendants and future claimants from any future claims against Plaintiff related to the Annuity.

2.      Attorney's Fees

**a.      Award of Fees and Costs**

Plaintiff asks for attorneys' fees and costs to compensate it for bringing this interpleader action.  Defendants have not objected to Plaintiff's request for fees and costs.  Courts generally have discretion to award attorneys' fees to a disinterested stakeholder in an interpleader action, Abex Corp. v. Ski's Enters., Inc., 748 F.2d 513, 516 (9th Cir. 1984), and routinely grant such awards absent a showing of bad faith, Schirmer Stevedoring Corp. Ltd. v. Seaboard Stevedoring Corp., 306 F.2d 188, 194–95 (9th Cir. 1962); see also Trs. of Dirs. Guild of Am.–Producer Pension Benefits Plans v. Tise (Tise), 234 F.3d 415, 426 (9th Cir. 2000) (holding a court has broad discretion in an interpleader action, not only with respect to whether to allow attorneys' fees to be deducted from the policy, but also with respect to the amount of fees to which an interpleader plaintiff is entitled).  The stakeholder will typically be compensated for reasonable attorneys' fees out of the interpleader fund deposited in the court.  Tise, 234 F.3d at 427.

As a general matter, a court will award fees from the proceeds whenever: "(1) the party seeking fees is a disinterested stakeholder; (2) who had conceded liability; (3) has deposited the funds into court; and (4) has sought a discharge from liability." Septembertide Publ'g v. Stein & Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989).  Based on the evidence before the Court, it appears that Plaintiff has met all of the criteria for being awarded attorneys' fees and costs.  There is no argument or evidence that Plaintiff has any interest in the funds or that this case arises from Plaintiff's wrongdoing.  Plaintiff has attempted to resolve all of the Defendants' claims by initiating the complaint in interpleader and this instant action.  Moreover, there is no opposition from any Defendant to Plaintiff's motion, and Defendant Micklos has stipulated to the motion.  Accordingly, the Court finds that an award of attorneys' fees is warranted in this action.  Thus, the remaining question is the amount to which Plaintiff is entitled.

### b.   Amount of Fees and Costs

The Ninth Circuit has indicated that attorneys' fees in an interpleader action are limited to time expended on preparing the complaint, obtaining service of process on the claimants to the fund, obtaining default judgment, and preparing an order discharging the plaintiff from liability and dismissing it from the action.   See Tise, 234 F.3d at 426–27.   Because the scope of compensable expenses is limited, attorneys' fees awards to the disinterested interpleader plaintiff are typically modest.   This furthers the "important policy interest" in seeing that the fee award does not unduly deplete the fund of those entitled to it.   Id. at 427.

Plaintiff proffers that its total fees and costs incurred in bringing this interpleader matter total $24,432.28, but that it is willing to reduce its fees and costs request to the flat award of $10,000.00.   (ECF No. 25-1 at 4 n.2.)   The Court notes, however, the fees and costs amount is proffered by Plaintiff in a footnote, devoid of supporting declarations or billing statements. Rather, the only clear filing of record which documents some of Plaintiff's costs is attached to the proof of service by publication, which indicates Plaintiff spent $925.00 to effectuate service by publication pursuant to the Court's orders.   (ECF No. 22-1.)   The burden of establishing entitlement to an attorneys' fee award lies solely with the claimant.   Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).   "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."   Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); see also Schwarz v. Secy. of Health and Human Servs., 73 F.3d 895, 908 (9th Cir. 1995).   Where supporting documentation is inadequate, Ninth Circuit caselaw indicates the district court may either request more information or "simply reduce[ ] the fee to a reasonable amount."   Fischer v. SJB–P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000) (citing Hensley, 461 U.S. at 433, for the proposition that a district court can "reduce" the fee award where the documentation is inadequate).

Here, without declarations or billing statements to support Plaintiff's fee request, the Court cannot assess the reasonableness of the requested fee amount with respect to counsel's hourly rates or time spent litigating this matter.   Nonetheless, it is not insignificant to this Court

18

that Defendant Micklos, who is the intended beneficiary of the remaining Annuity payments, has stipulated (through his county conservator guardian) to Plaintiff's motion and Plaintiff's fees request, which would be withheld from Micklos's next Annuity payment. Nor is the fact that Plaintiff proposed a significant reduction of over 50% of its total reported fees and costs lost on the Court. The Court is also cognizant that Plaintiff likely reasonably spent several hours to prepare and file the complaint (with its multiple exhibits) (ECF No. 1), as well as the instant motion (ECF No. 25), and that Plaintiff accrued significant costs during its multiple attempts to serve Defendant Sharon, which ultimately included multiple service attempts by several different process servers at different addresses, the use of Accurint, hiring a private investigator to locate and serve Sharon, filing a motion to serve by publication, and the attendant costs of publication after the Court granted Plaintiff's motion (see ECF Nos. 10, 13, 15, 19, 22). The Court also looks to rulings by other courts in the Eastern District of California, in which fees and costs close to the range requested by Plaintiff in similar interpleader matters was awarded, even where additional costs such as service by publication were not incurred. See, e.g., Am. Gen. Life Ins. Co. v. Vogel, No. 1:21-cv-00762-ADA-SKO, 2022 WL 4292270, at *9 (E.D. Cal. Sept. 16, 2022), report and recommendation adopted, 2022 WL 17082543 (E.D. Cal. Nov. 18, 2022) (granting attorneys' fees and costs in the amount of $8,641.46); Transamerica Life Ins. Co., 2012 WL 2839704 (awarding $7,164.25 in fees and costs); Wells Fargo Bank, Nat. Ass'n, 2009 WL 211386 (awarding $5575.55 in attorneys' fees and costs in pure interpleader-default judgment action). On the totality of this record and consistent with relevant caselaw, the Court, in exercising its "broad discretion" to award and assess attorneys' fees in an interpleader action, Tise, 234 F.3d at 426, finds the requested fees and costs amount proffered by Plaintiff in this action are reasonable, and recommends Plaintiff's fees' and costs request for $10,000.00 be granted.

      3.    Payment of Remaining Annuity Payments

Plaintiff seeks an order directing it to pay the remaining Annuity payments to Defendant Micklos Lemons (via his court-appointed conservator, the Fresno County Public Guardian) or his estate, if Micklos dies before disbursement of the final payment. Having previously determined

that Plaintiff sufficiently established Micklos, Michael's son, intended beneficiary, and only non-defaulting beneficiary is the proper beneficiary to the remaining Annuity payments in this action, Asuncion, 43 F. Supp. 3d at 1156; Eason, 736 F.2d at 133 n.6, the Court recommends Plaintiff's request be granted.

## IV.

### CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff American General Life Insurance Company's motion for default judgment (ECF No. 25) be GRANTED, as MODIFIED:

2.     Plaintiff American General Life Insurance Company's claim for interpleader be GRANTED;

3.     Default judgment be ENTERED in favor of Plaintiff American General Life Insurance Company against Defendants Heather K. Litz and Sharon Bushman;

4.     Defendants be ENJOINED and RESTRAINED from initiating or prosecuting further any proceeding, at law or in equity, against Plaintiff or its affiliates and agents arising out of or relating to Plaintiff's payment of the remaining payments due under the Annuity (No. 199934) in accordance with this order;

5.     Plaintiff and its affiliates and agents be fully and finally DISCHARGED from any further liability relating to the Annuity payments beyond making payments as contemplated by this order;

6.     Plaintiff be DIRECTED to pay the remaining Annuity payments to Defendant Micklos Lemons (via his court-appointed conservator, the Fresno County Public Guardian) or his estate or any designated beneficiary/ies, if Micklos dies before disbursement of the final payment (*i.e.*, before September 15, 2032);

7.     Plaintiff be AWARDED attorneys' fees and costs in the amount of $10,000.00, to be withheld from the September 15, 2022 Annuity payment amount of $100,000.00, prior to its payment to Micklos, by and through his court-appointed conservator, Fresno County Public Guardian;

8.   All claims that could have been asserted against Plaintiff arising out of the Annuity and/or Annuity payments that are the subject of the instant litigation be DISMISSED with prejudice; and

9.   The Court's order be deemed a final order under Federal Rule of Civil Procedure 54(b).

Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the Defendants at that Defendant's last known address.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 25, 2023**

UNITED STATES MAGISTRATE JUDGE